**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE SUBPOENA DUCES TECUM directed to non-party Kirkland & Ellis LLP in connection with<br><br>*USA v. Trevor Milton*, S.D.N.Y., Case No. 1:21-cr-00478-ER | Misc. Case No. 1:22-mc-206<br><br>ECF CASE |

# MEMORANDUM OF LAW IN SUPPORT OF KIRKLAND & ELLIS LLP'S <u>MOTION TO QUASH</u>

Dated: July 29, 2022

Jacquelyn M. Kasulis
Robert W. Allen, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
United States
Telephone: (212) 446-4800
jacquelyn.kasulis@kirkland.com
bob.allen@kirkland.com

*Attorneys for Kirkland & Ellis LLP*

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND .......................................................................................................................... 2

APPLICABLE LAW .................................................................................................................... 3

DISCUSSION ............................................................................................................................... 5

    I.    The Materials Milton Requests Are Neither Admissible, Specific, Nor Relevant. ............................................................................................................... 5

        A.    The Requests Do Not Seek Admissible Evidence. ..................................... 6

        B.    The Requests Are Insufficiently Specific. .................................................. 8

        C.    The Requests Seek Irrelevant Evidence. ..................................................... 9

        D.    Milton Cannot Show That the Requested Materials "Are Not Otherwise Procurable Reasonably in Advance of Trial" ............................ 9

    II.    Milton's Request for Kirkland's Interview Memos Is Also Improper Under Federal Rule of Criminal Procedure 17(h) ............................................................ 10

CONCLUSION ........................................................................................................................... 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bowman Dairy Co. v. United States*,
    341 U.S. 214 (1951) ............................................................................................................... 3

*Morris v. Eversley*,
    2004 WL 856301 (S.D.N.Y. Apr. 20, 2004) ........................................................................... 6

*United States v. Avenatti*,
    2020 WL 86768 (S.D.N.Y. Jan. 6, 2020) ................................................................................ 6

*United States v. Barnes*,
    2008 WL 9359654 (S.D.N.Y. Apr. 2, 2008) ....................................................................... 4, 5

*United States v. Bergstein*,
    2017 WL 6887596 (S.D.N.Y. Dec. 28, 2017) ........................................................................ 9

*United States v. Binday*,
    908 F. Supp. 2d 485 (S.D.N.Y. 2012) .................................................................................... 6

*United States v. Boyle*,
    2009 WL 484436 (S.D.N.Y. Feb. 24, 2009) .......................................................................... 7

*United States v. Brown*,
    1995 WL 387698 (S.D.N.Y. June 30, 1995) ...................................................................... 6, 7

*United States v. Carton*,
    2018 WL 5818107 (S.D.N.Y. Oct. 19, 2018) ................................................................ *passim*

*United States v. Chen De Yian*,
    1995 WL 614563 (S.D.N.Y. Oct. 19, 1995) .......................................................................... 7

*United States v. Cherry*,
    876 F. Supp. 547 (S.D.N.Y. 1995) ................................................................................. 4, 5, 6

*United States* v. *Cuthbertson*,
    630 F.2d 139 (3d Cir. 1980) ................................................................................................... 8

*United States v. Donziger*,
    2021 WL 1865376 (S.D.N.Y. May 10, 2021) .................................................................... 6, 8

*United States v. Kaufman*,
    2014 WL 2048198 (S.D.N.Y. May 19, 2014) ....................................................................... 5

*United States v. Nixon*,
    418 U.S. 683 (1974) ................................................................................................... 1, 4

*United States v. Sessa*,
    2011 WL 256330 (E.D.N.Y. Jan. 25, 2011) ........................................................................ 7

*United States v. Skelos*,
    2018 WL 2254538 (S.D.N.Y. May 17, 2018) ........................................................... 3, 4, 5, 8

*United States v. Vasquez*,
    258 F.R.D. 68 (E.D.N.Y. 2009) ........................................................................................ 10

*United States v. Weissman*,
    2002 WL 31875410 (S.D.N.Y. Dec. 26, 2002) ................................................................. 6, 7

*United States v. Yudong Zhu*,
    2014 WL 5366107 (S.D.N.Y. Oct. 14, 2014) ..................................................................... 10

**Statutes**

Fed. R. Crim. P. 17(c) ............................................................................................... *passim*

Fed. R. Crim. P. 17(h) ................................................................................................. 5, 10

Fed. R. Crim. P. 26.2 ....................................................................................................... 5

**PRELIMINARY STATEMENT**

Kirkland & Ellis LLP ("Kirkland") has served as counsel to Nikola Corporation in connection with various governmental inquiries that ultimately resulted in securities fraud charges being filed against Defendant Trevor Milton ("Milton"). On July 24, 2022, Milton served a Rule 17(c) subpoena on Kirkland that requests copies of Kirkland interview memos, as well as attorney work product and other materials related to a presentation that Kirkland made to the Government in November 2020. These requests are plainly improper under *United States v. Nixon*, 418 U.S. 683 (1974), and the Court should quash Milton's subpoena as a result.

In *Nixon*, the Supreme Court held that a criminal defendant can only issue Rule 17(c) subpoenas to seek relevant, admissible, and specific evidence—in other words, identified evidence that the defendant intends and is able to introduce as exhibits at trial. Milton's subpoena, however, plainly fails to satisfy this "strict standard." *United States v. Carton*, 2018 WL 5818107, at *1 (S.D.N.Y. Oct. 19, 2018).[1] It does not seek materials that could be introduced at trial: Kirkland's work product is plainly hearsay and thus plainly inadmissible. Nor does the subpoena seek specific, relevant pieces of evidence. It makes broad requests for *any* interview memo that was disclosed to a third party, no matter the witness or subject matter, and *any* notes, memoranda, or other documents that relate to Kirkland's November 2020 presentation. It is by no means obvious why notes about a presentation that Kirkland gave to the Government, or even that presentation itself, would be relevant to Milton's trial. These requests are thus exactly the type of fishing expedition that *Nixon* prohibits: while Milton may hope to find something unexpected that may be used as impeachment or for some other purpose, the law simply does not allow Rule 17(c) subpoenas to be used in this manner.

---

[1] Internal quotation marks and citations are omitted unless otherwise noted.

**BACKGROUND**

Kirkland has represented Nikola and certain of its executives in connection with inquiries by the Securities Exchange Commission ("SEC") and the U.S. Department of Justice ("DOJ"). In connection with this representation, Kirkland conducted an internal investigation that involved forensic interviews of a number of Nikola employees, and, after completing that investigation, made presentations to the SEC and DOJ.

On June 24, 2022, Milton served a Rule 17(c) subpoena on Kirkland (the "Subpoena"). (*See* Ex. A.)[2] The Subpoena purports to require Kirkland to produce work product that was created in connection with its representation of Nikola. Specifically, the Subpoena requests:

> 1. Interview memoranda that were read, shown, provided or otherwise disclosed to the U.S. Securities and Exchange Commission ("SEC"), the United States Attorney's Office for the Southern District of New York ("SDNY"), the United States Attorney's Office for the Eastern District of New York, the New York County District Attorney's Office, the United States Postal Inspection Service and/or EY, in connection with any presentations, meetings, virtual meetings, or telephone conferences relating to Nikola or Mr. Milton . . . .
>
> 2. Slides, presentations, notes or talking points that were read, shown, described, provided, or otherwise disclosed by Kirkland to the SDNY and/or the SEC in connection with the November 12, 2020 Presentation.
>
> 3. Notes, summaries, memoranda, minutes, or other documents reflecting the discussion between and among Kirkland, the SDNY, and/or the SEC in connection with the November 12, 2020 Presentation that were read, shown, described, provided, or otherwise disclosed to any third party other than Nikola or any agent working at the direction of Kirkland who was necessary to facilitate giving or receiving legal advice.

---

[2] All exhibits are attached to the July 29, 2022 Declaration of Robert W. Allen, P.C., which is being submitted contemporaneously with this memorandum.

(*Id.* at 2.) The "November 12, 2020 Presentation" is defined in the Subpoena as a particular presentation that Kirkland made to the SEC and DOJ on that date. (*Id.* at 1.)

On July 8, 2022, Kirkland sent counsel for Milton a letter explaining that these requests did not appear to seek admissible, specific, and relevant evidence, as required by *Nixon*. (*See* Ex. B.) So that Kirkland could better understand the justification for Milton's requests, however, Kirkland also offered to meet and confer with Milton's lawyers and discuss their rationale for the requests. (*See id.*)

Milton did not accept Kirkland's offer to meet and confer, and, indeed, did not even respond to Kirkland's letter for two weeks. Instead, Milton sent a letter to Kirkland late on the night of July 22nd in which he demanded—again, after having waited two weeks to respond to Nikola's letter—that Nikola make a production within five business days or else he would "move forward with bringing these matters to the Court's attention." (*See* Ex. C at 2.) Milton also claimed that the Court had already considered Kirkland's concerns with the Subpoena and "determined that [the Subpoena] is proper." (*Id.* at 1.)

## **APPLICABLE LAW**

Federal Rule of Criminal Procedure 17(c) governs the issuance of subpoenas in criminal cases and provides, in relevant part, as follows:

> (1) In General. A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.
>
> (2) Quashing or Modifying the Subpoena. On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.

Rule 17(c) "was not intended to provide an additional means of discovery." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951); *see also United States v. Skelos*, 2018 WL 2254538, at *2 (S.D.N.Y. May 17, 2018) (noting that Rule 17(c) subpoenas are not intended to be used "'as a discovery device, but instead should be used only as a mechanism for obtaining specific admissible evidence"). "Because of this, '[c]ourts must be careful that [R]ule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in [Rule] 16.'" *United States v. Barnes*, 2008 WL 9359654, at *2 (S.D.N.Y. Apr. 2, 2008) (quoting *United States v. Cherry*, 876 F. Supp. 547, 552 (S.D.N.Y. 1995)).

For these reasons, "Rule 17 subpoenas are held to a strict standard." *Carton*, 2018 WL 5818107, at *1. Under *Nixon*, parties seeking a Rule 17(c) subpoena must make four showings:

> (1) that the documents are evidentiary and relevant;
>
> (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence;
>
> (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and
>
> (4) that the application is made in good faith and is not intended as a general "fishing expedition."

418 U.S. at 699-700.

To show that the documents are "evidentiary and relevant," *Nixon* held that the party requesting the subpoena "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *Id.* at 700. "This test is the hallmark of Rule 17(c)(2) analysis, and courts in this jurisdiction and elsewhere have repeatedly and consistently applied it to determine whether third-party subpoenas served by defendants must be quashed as unreasonable or oppressive." *Barnes*, 2008 WL 9359654, at *2; *see also Skelos*, 2018 WL 2254538, at *1 ("[C]ourts in the Second Circuit have almost unanimously applied *Nixon* to subpoenas served on third-parties."). Under this test, "[t]he

4

defendant has the burden of specifically identifying the materials sought, and showing that they are relevant and admissible." *Barnes*, 2008 WL 9359654, at *3.

Of particular relevance here, "Rule 17(c) subpoenas cannot be used to obtain documents that would be excluded on hearsay grounds or would otherwise be inadmissible as evidence at trial." *Skelos*, 2018 WL 2254538, at *2. Thus, "[i]t is well established . . . that Rule 17(c) does not provide a basis for pre-trial 'production of materials whose evidentiary use is limited to impeachment.'" *Carton*, 2018 WL 5818107, at *1 (quoting *United States v. Kaufman*, 2014 WL 2048198, at *12-13 (S.D.N.Y. May 19, 2014); *see also Cherry*, 876 F. Supp. at 553 ("[T]he admissibility standard of Rule 17(c) . . . preclude[s] production of materials whose evidentiary use is limited to impeachment."); *Barnes*, 2008 WL 9359654, at *3 ("The items sought [by a Rule 17(c) subpoena] cannot merely be potentially relevant.").

Finally, Federal Rule of Criminal Procedure 17(h) provides that "[n]o party may subpoena a statement of a witness or of a prospective witness under this rule." Instead, the production of materials constituting witness statements is governed by Rule 26.2.

## DISCUSSION

### I. THE MATERIALS MILTON REQUESTS ARE NEITHER ADMISSIBLE, SPECIFIC, NOR RELEVANT.

Milton cannot carry his burden under *Nixon* for four reasons. First, the Subpoena seeks materials that are plainly hearsay, such as interview memos and communications about presentations to the Government, and that are accordingly inadmissible at trial. Second, it does not seek specific, identifiable pieces of evidence. Third, it requests materials like government presentations that are irrelevant to Milton's defense. And, fourth, it seeks evidence that Milton already has in one form or another by virtue of Nikola's and the Government's productions to him. Each of these reasons is a separate and independent basis to quash the Subpoena.

5

### A. The Requests Do Not Seek Admissible Evidence.

To begin, the Subpoena should be quashed because none of the requests seek *admissible* evidence. *See Barnes*, 2008 WL 9359654, at *3 ("The items sought . . . must be shown to [be] relevant and admissible at the time the subpoena is sought."); *Cherry*, 876 F. Supp. 547 at 552 ("The weight of authority holds that in order to be procurable by means of a Rule 17(c) subpoena, materials must themselves be admissible evidence."). The subpoena instead seeks notes of interviews that Kirkland conducted in connection with its own investigation, as well as materials reflecting Kirkland's communications with the Government. These types of materials are hearsay and, as courts have routinely held, cannot be introduced at trial. *See, e.g.*, *Morris v. Eversley*, 2004 WL 856301, at *2 (S.D.N.Y. Apr. 20, 2004) (holding that an interview memo was "pure hearsay"); *United States v. Brown*, 1995 WL 387698, at *10 (S.D.N.Y. June 30, 1995) (noting that NYPD interview "memoranda would, of course, be hearsay and inadmissible as evidence at trial"); *United States v. Donziger*, 2021 WL 1865376, at *7 (S.D.N.Y. May 10, 2021) (finding that documents between a non-party law firm and the court "appear to be classic hearsay").

While Milton presumably wants Kirkland's interview memos on the theory that they might turn out to be useful in predicting what a witness will say at trial or for impeachment, "[i]t is well established . . . that Rule 17(c) does not provide a basis for pre-trial production of materials whose evidentiary use is limited to impeachment." *Carton*, 2018 WL 5818107, at *1; *see also United States v. Avenatti*, 2020 WL 86768, at *6 (S.D.N.Y. Jan. 6, 2020) (holding that "the admissibility standard under Rule 17(c) does not extend to impeachment material" and rejecting argument that materials could be used to "demonstrate witnesses' bias or self-interest"); *United States v. Binday*, 908 F. Supp. 2d 485, 492 (S.D.N.Y. 2012) ("[A] proposed subpoena does not satisfy the *Nixon* three-pronged test if it seeks material that could be used at trial only to impeach a witness."); *United States v. Weissman*, 2002 WL 31875410, at *2 (S.D.N.Y. Dec. 26, 2002) (noting the

"absolute prohibition on the use of a Rule 17(c) subpoena solely for impeachment purposes"); *Cherry*, 876 F. Supp. at 553 ("[T]he admissibility standard of Rule 17(c) . . . preclude[s] production of materials whose evidentiary use is limited to impeachment"). Indeed, Kirkland's memos could not even properly be used for impeachment since "[the law firm]—not the witnesses—prepared the interview notes." *Weissman*, 2002 WL 31875410, at *2.

Given these restrictions, courts in this Circuit have commonly quashed subpoenas that request interview memos and notes of communications with the Government—exactly what Milton is seeking here. *See, e.g.*, *Carton*, 2018 WL 5818107, at *6 (quashing subpoena for "communications between a lawyer at [a law firm] and the Government . . . are plainly irrelevant and inadmissible as hearsay"); *Weissman*, 2002 WL 31875410, at *1 (quashing subpoena served on law firm for "documents evidencing statements by and interviews of" certain witnesses); *Brown*, 1995 WL 387698, at *10 (quashing subpoena for "memoranda of interviews conducted by either the NYPD or the Bronx District Attorney's Office" because they would be "inadmissible as evidence at trial"); *United States v. Sessa*, 2011 WL 256330, at *53 (E.D.N.Y. Jan. 25, 2011) ("Courts within this Circuit have held that a Rule 17(c) subpoena may not be used to obtain reports and investigative files from local law enforcement agencies in advance of trial . . . because such evidence is generally inadmissible at trial."); *United States v. Chen De Yian*, 1995 WL 614563, at *2 (S.D.N.Y. Oct. 19, 1995) (quashing Rule 17(c) subpoena because "it called for the production of the entire investigative file and is accurately described as a fishing expedition"); *United States v. Boyle*, 2009 WL 484436, at *2 (S.D.N.Y. Feb. 24, 2009) (quashing subpoena for investigative file as overbroad because although part of the investigative file "may be relevant to the case at bar," the "the bulk of materials sought by defendant would be inadmissible"). There is no basis to take a different tack in this case.

### B. The Requests Are Insufficiently Specific.

The Subpoena is also insufficiently specific. Milton's first request seeks *every* interview memo that Kirkland shared with a third party without any regard to the identity of the witness or what the witness said. Kirkland interviewed dozens of individuals in connection with its internal investigation. That investigation occurred at an early point in this matter, and, as a result, many of those interviews turned out to have little or no bearing whatsoever on the issues that ultimately made their way into the Government's indictment of Milton. And yet Milton makes no effort to separate the wheat from the chaff. Under these circumstances, his requests are plainly fishing expeditions rather than an effort to secure "identified evidence" that he intends to admit at trial. *See United States* v. *Cuthbertson,* 630 F.2d 139, 144 (3d Cir. 1980) ("The test for enforcement is whether the subpoena constitutes a good faith effort to obtain *identified evidence* rather than a general 'fishing expedition' that attempts to use the rule as a discovery device.") (emphasis added); *Skelos*, 2018 WL 2254538, at *3 (finding a subpoena's "requests are also far too broad, because they improperly seek much of DFS's investigative file").

The Subpoena's second and third requests fare no better. Milton seeks a wide swath of materials related to a particular presentation Kirkland made to the Government on Nikola's behalf, including any "notes, summaries, memoranda, minutes or other documents" "reflecting" or made "in connection with" the presentation. (Ex. A at 2.) Milton presumably does not know what materials exist, nor does he seek to identify particular communications. This is, again, a classic fishing expedition: Milton simply asks for everything Kirkland has, and, as a result, he cannot carry his burden of proving specificity under *Nixon*. *Cf. Donziger*, 2021 WL 1865376, at *7 ("It is [Defendant]'s burden to prove that the evidence he seeks is admissible, not Movants' burden to prove that it is not.").

### C. The Requests Seek Irrelevant Evidence.

The Subpoena should also be quashed because it seeks irrelevant information. Milton's second and third requests seek information about a presentation that Kirkland made to the Government on November 12, 2020. That presentation (and other materials relating to it, which Milton also seeks), however, is flatly irrelevant. Kirkland's views as to Milton's conduct simply do not matter for purposes of this trial: what matters is the testimonial and documentary evidence of Milton's innocence or guilt presented at trial. Milton's theory of relevance is by no means clear—he refused to confer on these requests—but to the extent he is just trying to impugn the Government's investigation, that tactic is plainly inadequate. *See Carton*, 2018 WL 5818107, at *3 ("[The defendant] seeks to justify the request for communications . . . [with] the Government by claiming that these documents . . . pertain to the lack of thoroughness and completeness of the Government's investigation.' But the Government is not on trial in this case, and the jury will not be asked to pass on the adequacy of its investigation.").

### D. Milton Cannot Show That the Requested Materials "Are Not Otherwise Procurable Reasonably in Advance of Trial"

Finally, the Subpoena should be quashed because it seeks materials that Milton has already received, in one form or another, from then Government. Milton's first request seeks interview memos that Kirkland disclosed to the Government or other third parties. To the extent Kirkland disclosed an interview memo to the DOJ, however, the DOJ would have already produced its notes of that disclosure with its 18 U.S.C. § 3500 materials and any related *Brady* or *Giglio* productions. (And Kirkland is not aware of any interview memos have been disclosed to a third party but not also the DOJ.) While Milton may believe that there is some difference between Kirkland's notes and the Government's, that is speculative and an insufficient basis for a Rule 17(c) subpoena. *See United States v. Bergstein*, 2017 WL 6887596, at *5 (S.D.N.Y. Dec. 28, 2017) (granting motion

9

to quash and noting that the defendant's "contention that the subpoenaed material may not be exactly the same as what the government sought . . . further runs afoul of *Nixon* by suggesting that the Subpoenas are part of a 'fishing expedition' for unspecified materials.").

Similarly, Milton *already has a copy* of the November 12, 2020 presentation that the Subpoena seeks in its second request. (*See USA v. Trevor Milton*, 1:21-cr-00478-ER, Dkt. 116-16 (publicly filed copy of slide deck from presentation).). Given that Milton already has the presentation itself, moreover, there is no obvious reason why he would need "[n]otes, summaries, memoranda, minutes, or other documents reflecting" that presentation. (Ex. A at 2 (Request 3).)

## II. MILTON'S REQUEST FOR KIRKLAND'S INTERVIEW MEMOS IS ALSO IMPROPER UNDER FEDERAL RULE OF CRIMINAL PROCEDURE 17(H).

The Subpoena's first request should also be quashed for the separate and independent reason that it seeks witness statements, which violates Federal Rule of Criminal Procedure 17(h). That Rule provides that "[n]o party may subpoena a statement of a witness or of a prospective witness under [Rule 17]." Fed. R. Crim. P. 17(h). Under the plain language of that provision, Milton's request is improper and should be quashed. *See, e.g.*, *Carton*, 2018 WL 5818107, at *4 (quashing request for personnel file in light of Rule 17(h) because the file related to "a prospective witness in this case" and "the Government will provide [the defendant] with his [18 U.S.C. §] 3500, Jencks and Giglio material by the deadline set by the Court, if indeed, it decides to call him to the stand"); *United States v. Yudong Zhu*, 2014 WL 5366107, at *3 (S.D.N.Y. Oct. 14, 2014) ("[E]vidence consisting of correspondence discussing Zhu's tenure likely constitute 'statement[s] of a witness or of a prospective witness' that Rule 17(h) mandates are 'not subject to subpoena.'");

*United States v. Vasquez*, 258 F.R.D. 68, 73 (E.D.N.Y. 2009) (granting motion to quash under Rule 17(h) where defendant subpoenaed witness statements in the possession of a third party).[3]

## CONCLUSION

For the aforementioned reasons, Kirkland respectfully submits that the Court should grant its motion to quash the Subpoena.

Dated: New York, New York
July 29, 2022

Kirkland & Ellis LLP

*/s/ Robert W. Allen*
Robert W. Allen, P.C.
Jacquelyn M. Kasulis
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
United States
Telephone: (212) 446-4800
bob.allen@kirkland.com
jacquelyn.kasulis@kirkland.com

*Attorneys for Kirkland & Ellis LLP*

---

[3] The Subpoena also requests certain documents that may be subject to an attorney-client or work product privilege. Kirkland is not moving to quash the subpoena at this time on that basis but does not intend to waive, and cannot waive, any Nikola privileges. Kirkland understands that the Subpoena does not call for the production of any materials that Kirkland deems privileged.

11