UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In Re: Subpoena Duces Tecum Directed to Non-Party Kirkland & Ellis LLP in connection with *USA v. Trevor Milton*, S.D.N.Y., Case No. 21-cr-478-ER | : | Misc. Case No. 22-mc-206-ER<br>**ECF Case** |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO KIRKLAND & ELLIS LLP'S MOTION TO QUASH**

Bradley J. Bondi
CAHILL GORDON & REINDEL LLP
1990 K Street NW, Suite 950
Washington, DC 20006
(202) 862-8910
bbondi@cahill.com

Marc L. Mukasey
MUKASEY FRENCHMAN LLP
570 Lexington Avenue, Suite 3500
New York, NY 10022
(212) 466-6400
Marc.Mukasey@mfsllp.com

*Counsel for Trevor Milton*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1
BACKGROUND ............................................................................................................................ 1
ARGUMENT .................................................................................................................................. 5
   I.   THE SUBPOENA SATISFIED THE *NIXON* REQUIREMENTS. .................................. 5
      A.   The Requests Are Specific. ................................................................................... 6
      B.   The Documents Requested Are Relevant. ........................................................... 7
      C.   The Documents Requested Are Admissible and Critical for Mr. Milton's Defense. ...... 9
   II.   RULE 17(H) DOES NOT APPLY. ...................................................................................... 13
CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abdell v. City of New York*,
 No. 05 CV 8453 (KMK) (JCF), 2006 WL 2664313 (S.D.N.Y. Sept. 14, 2006) ....................... 9

*United States v. Donziger*,
 No. 11 CV 691 (LAK), 2021 WL 1865376 (S.D.N.Y. May 10, 2021) ................................... 11

*Cohen v. City of New York*,
 255 F.R.D. 110 (S.D.N.Y. 2008) ............................................................................................. 9

*In re John Doe Corp.*,
 675 F.2d 482 (2d Cir. 1982) .................................................................................................. 9n

*N.Y. Times Co. v. U.S. Dep't of Just.*,
 939 F.3d 479 (2d Cir. 2019) .................................................................................................. 9n

Order of the Supreme Court, 207 F.R.D. 89, 440 (2002) ......................................................... 14, 15

*Rockwell Int'l Corp. v. U.S. Dep't of Just.*,
 235 F.3d 598 (D.C. Cir. 2001) .............................................................................................. 9n

*In re Steinhardt Partners, L.P.*,
 9 F.3d 230 (2d Cir. 1993) ...................................................................................................... 9n

*U.S. v. Medina*,
 992 F.2d 573 (6th Cir. 1993) ............................................................................................... 13n

*United States v. Akhavan*,
 No. 20 CR 188-2 (JSR), 2021 WL 1251893 (S.D.N.Y. Apr. 2, 2021) ............................... 5n, 6

*United States v. Avenatti*,
 No. 19 CR 373 (PGG), 2020 WL 508682 (S.D.N.Y. Jan. 31, 2020) ...................................... 7

*United States v. Barnes*,
 No. S9 04 CR 186 (SCR), 2008 WL 9359654 (S.D.N.Y. Apr. 2, 2008) ............................... 11

*United States v. Bergstein*,
 No. 16 CR 746 (PKC), 2017 WL 6887596 (S.D.N.Y. Dec. 28, 2017) ................................... 7

*United States v. Boyle*,
 No. 08 CR 523 (CM), 2009 WL 484436 (S.D.N.Y. Feb. 24, 2009) ..................................... 12

*United States v. Brown*,
 No. 95 CR 168 (AGS), 1995 WL 387698 (S.D.N.Y. June 30, 1995) ................................... 11

*United States v. Carollo*,
  No. 10 CR 654, 2012 WL 1195194 (S.D.N.Y. Apr. 9, 2012) ............................................1, 11

*United States v. Carton*,
  No. 17 CR 680 (CM), 2018 WL 5818107 (S.D.N.Y. Oct. 19, 2018).................................9, 14

*United States v. Cherry*,
  876 F. Supp. 547 (S.D.N.Y. 1995) ...........................................................................................13

*United States v. Cole*,
  No. 19 CR 869 (ER), 2021 WL 912425 (S.D.N.Y. Mar. 10, 2021) ............................... *passim*

*United States v. Ferguson*,
  No. 3:06 CR 137 (CFD), 2007 WL 4577303 (D. Conn. Dec. 26, 2007) ................................13

*United States v. Hussain*,
  No. 16 CR 00462 CRB-1, 2018 WL 1091083 (N.D. Cal. Feb. 28, 2018) ...............................14

*United States v. LaRouche Campaign*,
  841 F.2d 1176 (1st Cir. 1988) ..................................................................................................11

*United States v. Liddy*,
  354 F. Supp. 208 (D.D.C. 1972) ..............................................................................................11

*United States v. Marcus Schloss & Co.*,
  No. 88 CR 796 (CSH), 1989 WL 62729 (S.D.N.Y. June 5, 1989) ....................................11, 12

*United States v. Murray*,
  297 F.2d 812 (2d Cir. 1962) .....................................................................................................10

*United States v. Nachamie*,
  91 F. Supp. 2d 552 (S.D.N.Y. 2000) ........................................................................................5n

*United States v. Nelson*,
  No. 10 CR 414 (PKC), 2011 WL 2207584 (S.D.N.Y. June 3, 2011) ......................................5n

*United States v. Nixon*,
  418 U.S. 683 (1974) ............................................................................................... *passim*

*United States v. Rajaratnam*,
  753 F. Supp. 2d 317 (S.D.N.Y. 2011) .......................................................................................6

*United States v. RW Pro. Leasing Servs. Corp.*,
  228 F.R.D. 158 (E.D.N.Y. 2005) .......................................................................................... 6-7

*United States v. Seabrook*,
  No. 16 CR 467, 2017 WL 4838311 (S.D.N.Y. Oct. 23, 2017) .........................................10, 13

*United States v. Sessa*,
    No. 92 CR 351 (ARR), 2011 WL 256330 (E.D.N.Y. Jan. 25, 2011) ......................................12

*United States v. Skelos*,
    No. 15 CR 317 (KMW), 2018 WL 2254538 (S.D.N.Y. May 17, 2018) ...............................10

*United States v. Soliman*,
    No. 06 CR 236A, 2009 WL 1531569 (W.D.N.Y. May 29, 2009)...........................................5n

*United States v. Tucker*,
    249 F.R.D. 58 (S.D.N.Y. 2008) ................................................................................................5

*United States v. Vasquez*,
    258 F.R.D. 68 (E.D.N.Y. 2009)..............................................................................................13n

*United States v. Weigand*,
    520 F. Supp. 3d 609 (S.D.N.Y. 2021).....................................................................................5n

*United States v. Weissman*,
    No. 01 CR 529 (BSJ), 2002 WL 31875410 (S.D.N.Y. Dec. 26, 2002)...................................12

*United States v. Young*,
    No. 03-20400 BV, 2004 WL 784840 (W.D. Tenn. Mar. 4, 2004) ..........................................14

*United States v. Yudong Zhu*,
    No. 13 CR 761, 2014 WL 5366107 (S.D.N.Y. Oct. 14, 2014)................................................14

**Statutes**

18 U.S.C. § 3500..............................................................................................................................7

**Rules**

Fed. R. Crim. P. 16(a)(2) ..............................................................................................................13

Fed. R. Crim. P. 17(c) ............................................................................................................ *passim*

Fed. R. Crim. P. 17(h).................................................................................................1, 13, 14, 15

Fed. R. Crim. P. 26.2 ....................................................................................................13n, 14, 15

Fed. R. Evid. 613 ..........................................................................................................................10

Defendant Trevor Milton respectfully submits this Memorandum of Law in Opposition to Kirkland & Ellis LLP's Motion to Quash (the "Motion").

## PRELIMINARY STATEMENT

On June 22, 2022, on an *ex parte* application by defendant Trevor Milton, this Court issued a subpoena to Kirkland & Ellis LLP ("Kirkland") pursuant to Federal Rule of Criminal Procedure 17(c) (the "Subpoena"). Kirkland's refusal to comply with the Subpoena's requests is baseless, and the Court should deny the Motion.

*First*, as the Court already has determined, the Subpoena satisfies the requirements that the materials sought are admissible under *United States v. Nixon*, 418 U.S. 683, 699–700 (1974). The narrowly tailored subpoena seeks specific categories of relevant documents, including interview memos and communications, all related to the allegations in the Indictment and limited in time. Courts routinely grant subpoenas seeking production of interview memoranda and similar documents, acknowledging they can be used for impeachment, as this Court recently held in *United States v. Cole*, No. 19 CR 869 (ER), 2021 WL 912425, at *4 (S.D.N.Y. Mar. 10, 2021), or to develop other admissible evidence, *United States v. Carollo*, No. 10 CR 654 (HB), 2012 WL 1195194, at *2 (S.D.N.Y. Apr. 9, 2012).

*Second*, Kirkland incorrectly argues that Rule 17(h) precludes the production of interview memoranda. Rule 17(h) prohibits the production of witness statements by the government—not interview memoranda by a *non-party*—and has no application here.

## BACKGROUND

**Kirkland's Investigation**

On September 10, 2020, Hindenburg Research, an activist short seller, published a report (the "Hindenburg Report") claiming that Mr. Milton used his position at Nikola Corporation ("Nikola") to perpetrate a long-term fraud on retail investors. That same day, Nikola's board of

directors engaged Kirkland to conduct an internal investigation into the allegations contained in the Hindenburg Report.  *See* Nikola Presentation to the DOJ and SEC, Phase One Investigative Report (Nov. 12, 2020) (the "Kirkland Presentation") at 11, Declaration of Bradley J. Bondi dated August 10, 2022 ("Bondi Decl."), Exhibit A.

The following day, Kirkland reported those allegations to the Securities and Exchange Commission ("SEC").  *Id*.  Shortly thereafter, Nikola and its top executives (including Mr. Milton) received subpoenas from the SEC and Attorney General for the Southern District of New York ("Southern District") on behalf of the Department of Justice ("DOJ").[1]  Kirkland initially represented Mr. Milton and provided him advice, and even accepted a DOJ subpoena on his behalf.  By September 20, 2020, Mr. Milton had stepped down as Nikola's executive chairman and retained separate counsel.

**Kirkland's Presentation and Disclosures to the Government**

On November 12, 2020—less than two months after the publication of the Hindenburg Report—Kirkland presented the findings of its investigation to the SEC and DOJ, using a slide deck presentation that cited to 20 scoping interviews and 31 forensic interviews conducted by Kirkland of Nikola executives and employees.  *See id.* at 1, 25.[2]  The Kirkland Presentation summarized these interviews at length and directly quoted at least eleven Nikola employees. Relying heavily on those interviews, Kirkland absolved Nikola of any responsibility for the allegations in the Hindenburg Report and tried to shift the focus to Mr. Milton in order to curry

---

[1] Nikola Corp., Quarterly Report (Form 10-Q), at 23 (Nov. 9, 2020), https://www.sec.gov/Archives/edgar/data/1731289/000173128920000069/nkla-20200930.htm.
[2] *See also* Nikola Corp, Annual Report (Form 10-K), at 102–03 (February 25, 2021), https://sec.report/Document/0001731289-21-000006/nkla-20201231.htm ("The Company and its board of directors retained Kirkland & Ellis LLP to conduct an internal review in connection with the Hindenburg article . . . . Kirkland & Ellis had full access to Company data, emails and documents for collection and review.  No request by Kirkland & Ellis for information from the Company was denied. . . . **The Internal Review also included targeted interviews of over thirty (30) Company personnel.** " (emphasis added)).

2

favor with the government. For example, Kirkland concluded that "Hindenburg's claims regarding the state of Nikola's technology are unfounded" and that "[s]tatements by Nikola in its S-4 are largely accurate," although "Hindenburg is correct in describing a number of statements by Trevor Milton as misleading and/or false." *Id*. at 4–5. The Indictment filed against Mr. Milton in July 2021 parrots Kirkland's conclusions in the Kirkland Presentation. *Compare id*. at 4 ("Statements by Milton to other Nikola executives suggest that Milton used social media to appeal to 'Robinhood investors' and hype Nikola to potential investors."), *with* Indictment at ¶ 22 ("Trevor Milton . . . sought to fraudulently induce retail and other investors to purchase Nikola's stock by making false and misleading statements about Nikola's products and milestones on social media . . . .").

As of the date of the Kirkland Presentation, Nikola neither had settled with the SEC nor been indicted. In December 2021, over a year after the presentation, Nikola settled with the SEC. As recently as February 2, 2022, the prosecutors in this case confirmed that the DOJ's investigation of Nikola is ongoing.[3] *See* Government's Memorandum of Law in Opposition to Motion To Compel at 4, Feb. 2, 2022, ECF 86.

**Issuance of the Subpoena**

On November 11, 2021 and again on March 29, 2022, Mr. Milton moved *ex parte* for an order directing early return of a subpoena to Kirkland pursuant to Rule 17(c)(1) of the Federal Rules of Criminal Procedure. On June 15, 2022, this Court denied Mr. Milton's motion, ruling that "the requests raise privilege concerns" and instructing that "[t]he requests should be limited to non-privileged materials." June 15, 2022 Order, Bondi Decl., Exhibit B.

---

[3] As part of that investigation, Kirkland also verbally recited interview summaries to both the SEC and DOJ, a fact relayed to the undersigned counsel by the prosecutors for the Southern District in this case during a teleconference on January 22, 2022. Bondi Decl. at ¶ 3.

Mr. Milton resubmitted the subpoena to the Court on June 17, 2022, after limiting the requests to the following categories of documents related to Kirkland's investigation: (1) interview summaries relating to Mr. Milton and Nikola that Kirkland shared with government agencies and other third parties, (2) materials that were described or shown to the DOJ and SEC in connection with the Kirkland Presentation, and (3) documents shown to third parties that describe or concern the Kirkland Presentation.  On June 22, 2022, the Court signed the Subpoena, and on June 24, 2022, Mr. Milton served the Subpoena on Kirkland.  *See* Subpoena, Bondi Decl., Exhibit C.

**<u>Kirkland's Refusal To Comply with the Subpoena</u>**

On July 8, 2022, the return date of the Subpoena, Kirkland responded by letter that it broadly objected to "each of the requests in the Subpoena."  Letter from R. Allen to B. Bondi, Bondi Decl., Exhibit D.  Kirkland contended that the Subpoena seeks attorney work product, though Kirkland has not moved to quash on that basis.  Kirkland further contended that the Subpoena does not satisfy the requirements that the materials sought are admissible under *United States v. Nixon*, 418 U.S. 683, 699–700 (1974), and that "the materials you are requesting would not have evidentiary value in your matter, especially given case law providing that Rule 17(c) subpoenas cannot be issued to secure impeachment materials."  Letter from R. Allen to B. Bondi, Bondi Decl., Exhibit D.  Kirkland, however, provided no grounds why either it is unable to comply with the Subpoena or why compliance with the Subpoena would be burdensome or oppressive.

Defense counsel attempted to confer with Kirkland and offered several available days to speak.  Defense counsel wrote, in part:

> Although your July 8th letter is perfectly clear in your unwillingness to comply with the Court's Subpoena, your letter does not identify any valid reason why K&E is unable to comply with the Subpoena, much less grounds why compliance

4

with the Subpoena would be unreasonable or oppressive. If K&E plans to comply with the Subpoena, in whole or part, please let us know immediately when we can expect production and of what materials. If K&E remains unwilling or unable to comply with the Subpoena, please let us know immediately the Requests with which K&E will not comply and the specific grounds for non-compliance. If K&E either fails to comply with the Subpoena or provides insufficient grounds for its non-compliance, we intend to move the Court for relief, including under Federal Rule of Criminal Procedure 17(g). ***We are available to discuss over the weekend or any time early next week if you are willing to discuss. Otherwise, we will move forward with bringing these matters to the Court's attention by the end of next week***.

Bondi Decl., Exhibit E.[4] Kirkland did not respond and proceeded with the present motion.

On a phone call on August 1, 2022, with respect to a different subpoena, defense counsel again invited Kirkland to meet-and-confer about the Subpoena, notwithstanding the pending Motion. Bondi Decl. at ¶ 8. Kirkland's counsel responded that he did not see much value in conferring further, as the parties' legal positions were clear. *Id*.

## ARGUMENT

### I. THE SUBPOENA SATISFIED THE *NIXON* REQUIREMENTS.

Kirkland erroneously contends that the Subpoena is improper under *Nixon*,[5] *see* Motion at 5–9, and that the documents sought "would not have evidentiary value in your matter, especially given case law providing that Rule 17(c) subpoenas cannot be issued to secure

---

[4] Kirkland's representation that Mr. Milton "demanded . . . that Nikola make a production within five business days or else he would 'move forward with bringing these matters to the Court's attention[,]'" Motion at 3, is simply false. Defense counsel said no such thing.

[5] *Nixon* involved the issuance of a subpoena by the government to the president of the United States. 418 U.S. 683. Several courts have criticized the application of the *Nixon* standard to Rule 17(c) subpoenas issued by defendants to non-parties. *See, e.g., United States v. Nachamie*, 91 F. Supp. 2d 552 (S.D.N.Y. 2000); *United States v. Weigand*, 520 F. Supp. 3d 609, 612–13 (S.D.N.Y. 2021). Mr. Milton believes the Court should apply the standard set forth in *United States v. Tucker*, 249 F.R.D. 58 (S.D.N.Y. 2008), whereby the defendant seeking a Rule 17 subpoena "need only show that the request is (1) reasonable, construed as 'material to the defense,' and (2) not unduly oppressive for the producing party to respond". *Id*. at 66; s*ee also, e.g.*, *United States v. Akhavan*, No. 20 CR 188 2 (JSR), 2021 WL 1251893, at *1 (S.D.N.Y. Apr. 2, 2021) (applying *Tucker* standard); *United States v. Nelson*, No. 10 CR 414 (PKC), 2011 WL 2207584, at *3 (S.D.N.Y. June 3, 2011) (assessing *Nixon* and *Tucker* standards); *United States v. Soliman*, No. 06 CR 236A, 2009 WL 1531569, at *4 (W.D.N.Y. May 29, 2009) (applying *Tucker* standard). Because this Court declined to apply the *Tucker* standard in *United States v. Cole*, No. 19 CR 869 (ER), 2021 WL 912425, at *3 (S.D.N.Y. Mar. 10, 2021) and because Mr. Milton satisfies both *Nixon* and *Tucker*, we address the higher *Nixon* standard in this memorandum of law.

5

impeachment materials." Letter from R. Allen to B. Bondi, Bondi Decl., Exhibit D. Having issued the Subpoena, this Court already has determined that the Subpoena meets the requirements of *Nixon*. *See, e.g.*, *United States v. Akhavan*, No. 20 CR 188 2 (JSR), 2021 WL 1251893, at *1 (S.D.N.Y. Apr. 2, 2021) ("[T]he defendant is entitled to modest pre-trial discovery, and he must seek leave of Court prior to issuing a subpoena for documents returnable before trial. *See* Fed. R. Crim. P. 17. Such judicial authorization should be granted, moreover, only if the defendant has demonstrated '(1) relevancy; (2) admissibility; and (3) specificity.'" (quoting *Nixon*, 418 U.S. at 700)). The Court's determination that the Subpoena meets the *Nixon* requirements was correct and should not be revisited.

A. **The Requests Are Specific.**

Kirkland's contention that the Subpoena asks for "everything Kirkland has," Motion at 8, is meritless. *See United States v. Cole*, No. 19 CR 869 (ER), 2021 WL 912425, *4–5 (S.D.N.Y. Mar. 10, 2021) (Ramos, J.) (denying motion to quash a Rule 17(c) subpoena request for "all" "documents from a narrow time period [that related] to a specific subject matter—namely, to [a specific individual's] resignation or termination"); *United States v. Rajaratnam*, 753 F. Supp. 2d 317, 322 (S.D.N.Y. 2011) (holding that a Rule 17(c) subpoena request seeking "all" communications between defendants and "any agent or employee" of Galleon was not an "improper fishing expedition" because the Superseding Indictment alleged that the defendants conspired with current and former "known and unknown" Galleon employees). Far from a "fishing expedition," the Subpoena clearly describes the documents sought, which fall within three narrow categories (enumerated as Requests No. 1–3) and are related to a narrow time frame. *See United States v. RW Pro. Leasing Servs. Corp.*, 228 F.R.D. 158, 164 (E.D.N.Y. 2005) ("A request is considered sufficiently specific where it states with reasonable particularity the subjects to which the documents relate and limits documents to a reasonable period of time.").

Under Rule 17(c), the Subpoena requests are sufficiently specific.  *See id.*; *Cole*, 2021 WL 912425, at *4 ("To satisfy the specificity prong, a Rule 17(c) subpoena must be able to reasonably specify the information contained or believed to be contained in the documents sought rather than merely hop[e] that something useful will turn up." (quoting *United States v. Avenatti*, No. 19 CR 373 (PGG), 2020 WL 508682, *4 (S.D.N.Y. Jan. 31, 2020)) (internal quotation marks omitted)).

Kirkland incorrectly asserts that the Subpoena "seeks materials that Milton has already received, in one form or another, from then [sic] Government."  Motion at 9.  Unlike the subpoenas at issue in *United States v. Bergstein*, No. 16 CR 746 (PKC), 2017 WL 6887596, at *5 (S.D.N.Y. Dec. 28, 2017), upon which Kirkland relies, the Subpoena on its face excludes documents "produced directly to the U.S. Department of Justice, United States Attorney's Office, Southern District of New York, in response to any prior subpoena or search warrant issued in this matter."  Bondi Decl., Exhibit C.  Moreover, Kirkland's argument that, because the government has already learned the contents of the interview memos, "the DOJ would have already produced its notes of that disclosure with its 18 U.S.C. § 3500 materials and any related *Brady* or *Giglio* productions[,]" Motion at 9, misses the point.  What Mr. Milton received is no substitute for the underlying interview memoranda.  Mr. Milton should not be forced to rely on the government's characterization of these documents.

**B. The Documents Requested Are Relevant.**

Kirkland argues that the Subpoena seeks irrelevant information because "Kirkland's views as to Milton's conduct simply do not matter for purposes of this trial."  Motion at 9.  But the Kirkland Presentation examines the veracity of certain statements by Mr. Milton in each category of allegations in the Indictment, while extensively referencing and quoting from witness interviews conducted during Kirkland's investigation.  *See*, *e.g.*, Kirkland Presentation at 31–

7

118, Bondi Decl., Exhibit A. For example, the Indictment alleges misstatements related to Nikola's ability to produce hydrogen fuel at or below $4 per kilogram, *see* Indictment at ¶ 66, and the Kirkland Presentation vaguely references "employees" interviewed who indicated that "[a] price of $4/kg is aggressive, but feasible" and "Nikola has hydrogen pricing models pursuant to which they can produce hydrogen at a price of less than $3/kg":

### 3. Hydrogen Production

**Interviews**

Several Employees
- Nikola **has never produced** hydrogen.
- The headquarters station can **dispense** (not produce) 1,000 kg/day.
- The headquarters station can **store** (not produce) 1,000 kg/day. Nikola has **hydrogen pricing models** pursuant to which they can produce hydrogen at a price of less than $3/kg.
- A price of $4/kg is **aggressive, but feasible**. It depends on acquiring electricity for less than or equal to 3.5 cents per kilowatt hour.
- Nikola's discussions with energy providers show that the **electricity cost assumptions** in the pricing models presented to investors are **well-founded**.

Kirkland Presentation at 38. The Kirkland Presentation—through the interviews it references and quotes—reflects not just "Kirkland's views," but also the views of dozens of employees as to the veracity of Mr. Milton's statements and their presumed knowledge of facts that would inform those views. Without the complete interview summaries, Mr. Milton cannot understand the context of the quotes used throughout the Kirkland Presentation, determine the identities of employees who have been quoted anonymously, or identify other exculpatory statements.

Further, Nikola repeatedly has refused to allow defense counsel to speak with any of its employees. *Even if* Mr. Milton now were permitted to interview these employees (which he has not been), the passage of time prevents those interviews from being truly replicated. *See, e.g.*, *Abdell v. City of New York*, No. 05 CV 8453 (KMK) (JCF), 2006 WL 2664313, at *7 (S.D.N.Y. Sept. 14, 2006) (observing that there was no substitute for police officers' contemporaneous notes due to "the difficulty of recalling the details of chaotic events that took place more than

two years ago"); *Cohen v. City of New York*, 255 F.R.D. 110, 125 (S.D.N.Y. 2008) ("[B]ecause the notes are the product of contemporaneous observations, they cannot be replicated. This is not like the situation where an investigator's notes retain their confidentiality because all parties have an equal opportunity to make the same relevant observations or interview the same witnesses."). The *only* way for Mr. Milton to obtain this information is to review the interview summaries themselves.

Unlike *United States v. Carton*, No. 17 CR 680 (CM), 2018 WL 5818107 (S.D.N.Y. Oct. 19, 2018), a case upon which Kirkland relies, Mr. Milton is neither challenging the "thoroughness and completeness of the [] investigation" nor seeking "not producible" attorney work product. *Id*. at 6.[6] The Subpoena seeks only interview summaries and other materials that have been disclosed to a third party. These interview summaries and materials are plainly relevant, because they could negate the falsity, materiality, and intent elements of the alleged offenses. *See Nixon*, 418 U.S. at 700 (relevance prong satisfied where there is a "rational inference" that at least part of the materials sought "relate to the offenses charged in the indictment").

### C. The Documents Requested Are Admissible and Critical for Mr. Milton's Defense.

The documents sought are critical for Mr. Milton's defense and may be admitted for a

---

[6] Kirkland expressly has declined to move to quash the Subpoena on the grounds of attorney-client privilege or attorney work-product, Motion at 11 n.3, and would have little basis to do so. By disclosing the materials sought to the government on multiple occasions and in various forms, Kirkland indisputably waived work-product protection over its interview summaries and other materials related to the Kirkland Presentation. Attorneys generally may not claim work-product protection over material "voluntarily submitted to an investigatory body." *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993). Oral disclosures have the same effect because "verbal description of the contents of a document, if sufficiently specific, is as 'inconsistent with the maintenance of secrecy' of that document as would be disclosure of the document itself." *N.Y. Times Co. v. U.S. Dep't of Just.*, 939 F.3d 479, 495 (2d Cir. 2019) (quoting *Rockwell Int'l Corp. v. U.S. Dep't of Just.*, 235 F.3d 598, 605 (D.C. Cir. 2001)); *see also In re John Doe Corp.*, 675 F.2d 482, 493 (2d Cir. 1982) (To the extent that the interviewee's answers "imply the attorney's questions from which inferences might be drawn as to his thinking, those inferences merely disclose the concerns a layman would have as well as a lawyer in these particular circumstances, and in no way reveal anything worthy of the description 'legal theory.'").

number of reasons.  ***First***, the interview summaries contain exculpatory information and will help Mr. Milton identify potential trial witnesses.  ***Second***, the interview memoranda may help Mr. Milton prepare for cross examinations—a use which, despite Kirkland's assertion to the contrary, clearly falls within the ambit of Rule 17.  *See United States v. Skelos*, No. 15 CR 317 (KMW), 2018 WL 2254538, at *2 (S.D.N.Y. May 17, 2018), *aff'd*, 988 F.3d 645 (2d Cir. 2021) ("[D]ocuments containing prior statements of a witness that are inconsistent with that witness's testimony at trial can be admissible under Federal Rule of Evidence 613, and so can be the proper subject of a Rule 17(c) subpoena"); *Cole*, 2021 WL 912425, at *4 ("[E]vidence sought for impeachment can satisfy the admissibility prong under *Nixon* and, therefore, be sought through a Rule 17(c) trial subpoena."); *United States v. Seabrook*, No. 16 CR 467, 2017 WL 4838311, at *2 (S.D.N.Y. Oct. 23, 2017) ("[I]mpeachment evidence can be obtained by means of a Rule 17(c) subpoena at trial." (citing *United States v. Murray*, 297 F.2d 812, 821 (2d Cir. 1962))).  Here, the government's trial witness list includes, *inter alia*, Kim Brady, Dale Prows, Tony Epperson, and Kevin Lynk, whose interviews are quoted or described in the Kirkland Presentation.  ***Third***, the documents sought in Requests No. 2 and 3 also may speak to these witnesses' bias or motivations for testifying, which is an independent reason for their admissibility.  *Skelos*, 2018 WL 2254538, at *2 ("Documents bearing on a witness's decision to 'cooperate with the government' or any bias towards the defendant, however, can be proper subjects of a Rule 17(c) motion because those types of documents may themselves be admissible into evidence.").

      Unlike the cases upon which Kirkland relies, there is a clearly articulable basis for admission of the requested materials.  *Compare supra* I.C, *with United States v. Barnes*, No. 04 CR 186 (SCR), 2008 WL 9359654, at *4 (S.D.N.Y. Apr. 2, 2008) (reasoning that defendant

could not articulate the relevance or admissibility of subpoena seeking two years of broad records related to another inmate), *United States v. Brown*, No. 95 CR 168 (AGS), 1995 WL 387698, at *10 (S.D.N.Y. June 30, 1995) (Defendant "entirely failed to specify the materials being sought, or to show how they are relevant and admissible"), *and United States v. Donziger*, No. 11 CV 691 (LAK), 2021 WL 1865376, at *7 (S.D.N.Y. May 10, 2021) (Defendant "makes no meaningful effort to explain how the documents and communications sought . . . are admissible."). The Subpoena more than satisfies *Nixon*'s admissibility requirement. *See Carollo*, 2012 WL 1195194, at *2 ("[I]if a document is *arguably* relevant and admissible under the Rules of Evidence, the *Nixon* 'evidentiary' requirement is likely satisfied[.]" (quoting *United States v. Libby,* 432 F. Supp. 2d 26, 31 (D.D.C. 2006) (emphasis added)).

Courts routinely issue and enforce subpoenas seeking interview memoranda from law firms or others. *See United States v. Marcus Schloss & Co.*, No. 88 CR 796 (CSH), 1989 WL 62729, at *3 (S.D.N.Y. June 5, 1989) (directing production of interview memoranda prepared by law firm, other than portions constituting attorney work product); *United States v. Liddy*, 354 F. Supp. 208, 211–12 (D.D.C. 1972) (denying motion to quash Rule 17(c) subpoena seeking notes and recordings of newspaper's interviews of witness even though the subpoena's "sole purpose" was "to obtain impeachment evidence"); *United States v. LaRouche Campaign*, 841 F.2d 1176, 1177 (1st Cir. 1988) (holding it was not an abuse of discretion to order production of statements made by an expected government witness to a television network, as "it was likely that some statements made in the course of [the witness's] lengthy interview would be inconsistent with his trial testimony and might also show bias"). In *Marcus Schloss*, the court observed that, "[p]ossible inconsistencies or contradictions are of obvious interest to the defendant, considering the centrality of [the witness's] role in the case against [the defendant], and the crucial issue of

11

his credibility[.]" 1989 WL 62729, at *3. The defendant's interest in "exploring possible areas of impeachment" required that he be permitted "to examine the notes of interviews with prosecutors or government agents kept by attorneys for an important government witness." *Id*. at *4.

None of the cases upon which Kirkland relies in support of its motion to quash presents comparable facts. Unlike *United States v. Weissman*, No. 01 CR 529 (BSJ), 2002 WL 31875410 (S.D.N.Y. Dec. 26, 2002), in which the court quashed a subpoena to a law firm and upon which Kirkland relies, defense counsel has *actual* knowledge[7] that these interview summaries contain valuable exculpatory material and material that likely will be used for impeachment. *Id*. at *1 (Because the defendant could only speculate about the contents of the interview memoranda that he sought, he did not "persuade[] the Court that the statements made by the individuals named in the subpoena will be useful or necessary for impeachment."). Other cases cited by Kirkland are even farther off the mark. *See, e.g.*, *United States v. Boyle*, No. 08 CR 523 (CM), 2009 WL 484436, at *2 (S.D.N.Y. Feb. 24, 2009) (quashing subpoena where defendant sought the "complete investigative file" pertaining to a murder, including detective notes, witness payments, and correspondence among law enforcement for several reasons because, *inter alia*, many of the documents were obtainable from the U.S. Attorney's Office and many such documents would be inadmissible at trial); *United States v. Sessa*, No. 92 CR 351 (ARR), 2011 WL 256330, at *53 (E.D.N.Y. Jan. 25, 2011), *aff'd*, 711 F.3d 316 (2d Cir. 2013) (concluding failure of attorney to subpoena investigative file was not ineffective assistance of counsel because such a subpoena "is prohibited by Rule 16(a)(2), and because such evidence is generally inadmissible at trial"); *United States v. Cherry*, 876 F. Supp. 547, 549 (S.D.N.Y. 1995) (quashing subpoenas to the New

---

[7] *See, e.g.*, I.B, *supra*, (quoting exculpatory interview summaries).

York Police Department, finding it to constitute the "government," rather than a non-party, as "95 percent of the federal prosecutors' investigatory file consists of documents generated by the NYCPD").

## II. RULE 17(H) DOES NOT APPLY.

Finally, Kirkland mistakenly asserts that the Subpoena's first request (for interview memoranda) is impermissible under Federal Rule of Criminal Procedure 17(h).[8] Motion at 10–11. But Rule 17(h) prevents Mr. Milton from subpoenaing the *government*—not non-parties like Kirkland—to obtain witness statements.[9] Courts in the Second Circuit regularly allow subpoenas of witness statements from non-parties. *See, e.g.*, *Seabrook*, 2017 WL 4838311, at *3 (denying motion to quash subpoenas seeking statements of a prospective witness from non-parties); *United States v. Ferguson*, No. 3:06 CR 137 (CFD), 2007 WL 4577303, at *3 (D. Conn. Dec. 26, 2007) (holding that "prior statement[s] within" non-party's possession were "properly within the scope of [defendant's] Rule 17(c) subpoena").

Multiple courts specifically have recognized that Rule 17(h) does not prevent a defendant from subpoenaing witness statements. *See, e.g.*, *United States v. Hussain*, No. 16 CR 00462 CRB-1, 2018 WL 1091083, at *2 (N.D. Cal. Feb. 28, 2018) (holding that Rule 17(h) "only applies to statements in the possession of the government" and "do[es] not reflect an intention to

---

[8] "No party may subpoena a statement of a witness or of a prospective witness under this rule. Rule 26.2 governs the production of the statement." Fed. R. Crim. P. 17(h)
[9] The "interview memoranda" sought by Mr. Milton are likely not even "witness statements" within the meaning of the Federal Rules of Criminal Procedure. Rule 26.2 defines a witness "statement" to mean: "(1) a written statement that the witness makes and signs, or otherwise adopts or approves; (2) a substantially verbatim, contemporaneously recorded recital of the witness's oral statements that is contained in any recording or any transcript of a recording; or (3) the witness's statements to a grand jury[.]" Fed. R. Crim. P. 26.2(f). Kirkland has not asserted either that the interview memoranda were adopted and approved by the witnesses, or that the memoranda were verbatim transcriptions of the witnesses' statements. *See, e.g.*, *U.S. v. Medina*, 992 F.2d 573, 580 (6th Cir. 1993) (holding that interview notes were not witness "statements" because the notes were not read back to the witness nor did she read the notes, know of their existence, or adopt them as her own). For example, in *United States v. Vasquez*, 258 F.R.D. 68, 73 (E.D.N.Y. 2009), cited by Kirkland, the defendant sought witness statements directly from the police department; materials like this are commonly understood to be witness statements, not the law firm memoranda Mr. Milton seeks.

make third-party witness statements undiscoverable"); *United States v. Young*, No. 03-20400 BV, 2004 WL 784840, at *2 (W.D. Tenn. Mar. 4, 2004) (holding that "Rule[] 17(h) . . . only appl[ies] to statements in the government's possession").  Although Kirkland cites two cases in which the court *considered* extending Rule 17(h) to witness materials in the possession of non-parties, in each case, the court neither explained its reasoning nor relied on that basis for its ruling.  *See United States v. Yudong Zhu*, No. 13 CR 761, 2014 WL 5366107, at *3 (S.D.N.Y. Oct. 14, 2014) (stating that correspondence from university employer discussing the defendant's tenure "likely" constituted a witness statement precluded under Rule 17(h)); *Carton*, 2018 WL 5818107, at *4 (commenting that personnel file and communications "would likely be hearsay and/or the statements of Government witnesses, which, again, are not discoverable under Rule 17(h)").  Instead, each court relied upon its conclusion that the subpoenas failed to meet the *Nixon* requirements—which is not the case here, *see supra* I.

As originally enacted, Rule 17(h) provided that "[s]tatements made by witnesses or prospective witnesses may not be subpoenaed *from the government or the defendant* under this rule, but shall be subject to production only in accordance with the provisions of Rule 26.2."  Order of the Supreme Court, 207 F.R.D. 89, 440 (2002) (emphasis added).  When this provision of the Rule was amended in 2002, that language was removed, but the Advisory Committee made clear that the "change[] [was] *intended to be stylistic only*," and was simply "part of the general restyling of the Criminal Rules to make them more easily understood and to make style and terminology consistent throughout the rules."  *Id.* at 443–44 (emphasis added).  This explanation is reinforced by the second part of Rule 17(h), which provides that "Rule 26.2 governs the production of the statement."  Rule 17(h)'s reference to Rule 26.2 demonstrates that Rule 17(h) is concerned *only* with the procedure by which the parties obtain material from each

other, not from non-parties, because Rule 26.2 deals exclusively with the procurement of material *from the opposing party* after a witness has testified on direct examination. The prohibition of Rule 17(h) does not apply to the Subpoena.

## **CONCLUSION**

For the reasons above, the Court should deny Kirkland's motion to quash and order the prompt production of the responsive documents.

Dated: August 10, 2022

Respectfully submitted,

/s/ Bradley J. Bondi
Bradley J. Bondi
CAHILL GORDON & REINDEL LLP
1990 K Street NW, Suite 950
Washington, DC 20006
(202) 862-8910
bbondi@cahill.com

Marc L. Mukasey
MUKASEY FRENCHMAN LLP
570 Lexington Avenue, Suite 3500
New York, NY 1002
(212) 466-6400
Marc.Mukasey@mfsllp.com

*Counsel for Trevor Milton*