**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE SUBPOENA DUCES TECUM directed to non-party Kirkland & Ellis LLP in connection with<br><br>*USA v. Trevor Milton*, S.D.N.Y., Case No. 1:21-cr-00478-ER | Misc. Case No. 1:22-mc-206<br><br>ECF CASE |

# REPLY MEMORANDUM IN SUPPORT OF KIRKLAND & ELLIS LLP'S MOTION TO QUASH

Dated: August 17, 2022

Jacquelyn M. Kasulis
Robert W. Allen, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
United States
Telephone: (212) 446-4800
jacquelyn.kasulis@kirkland.com
bob.allen@kirkland.com

*Attorneys for Kirkland & Ellis LLP*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

DISCUSSION .................................................................................................................................. 2

    I.     Milton's Opposition Underscores That the Subpoena Is an Improper Fishing Expedition. ........................................................................................................................ 2

    II.    Milton Cannot Carry His Burden Under *Nixon* of Showing That His Subpoena Seeks Admissible Evidence. .............................................................................. 3

          A.     Milton Has Not Shown That Interview Memoranda Are Admissible. ........ 3

          B.     Milton Has Not Shown That Materials "Reflecting" Kirkland's November 2020 Presentation to the Government Are Admissible. ............. 5

          C.     Courts Routinely Reject Subpoenas for Analogous Materials. ................... 6

    III.   The Court Should Hold That Rule 17(c) Subpoenas Cannot Be Used for Impeachment. ................................................................................................................... 8

    IV.   The Subpoena Is Improper Under Rule 17(h). ........................................................... 9

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*United States v. Almonte*,
   956 F.2d 27 (2d Cir. 1992) ..................................................................................................2, 5

*United States v. Barnes*,
   560 F. App'x 36 (2d Cir. 2014) ...........................................................................................3, 6

*United States v. Benson*,
   961 F.2d 707 (8th Cir. 1992) ...................................................................................................5

*United States v. Bergstein*,
   2017 WL 6887596 (S.D.N.Y. Dec. 28, 2017) .........................................................................3

*United States v. Binday*,
   908 F. Supp. 2d 485 (S.D.N.Y. 2012) .....................................................................................9

*United States v. Brown*,
   1995 WL 387698 (S.D.N.Y. June 30, 1995) .......................................................................3, 7

*United States v. Carollo*,
   2012 WL 1195194 (S.D.N.Y. Apr. 9, 2012) ............................................................................6

*United States v. Carton*,
   2018 WL 5818107 (S.D.N.Y. Oct. 19, 2018) ...............................................................7, 9, 10

*United States v. Cherry*,
   876 F. Supp. 547 (S.D.N.Y. 1995) ..................................................................................1, 4, 9

*United States v. Cole*,
   2021 WL 912425 (S.D.N.Y. Mar. 10, 2021) .......................................................................6, 8

*United States v. Donziger*,
   2021 WL 1865376 (S.D.N.Y. May 10, 2021) .........................................................................3

*United States v. Ferguson*,
   2007 WL 2815068 (D. Conn. Sept. 26, 2007) .........................................................................9

*United States v. Giampa*,
   1992 WL 296440 (S.D.N.Y. Oct. 7, 1992) ..............................................................................8

*United States v. Hatfield*,
   2009 WL 2030350 (E.D.N.Y. July 14, 2009) ........................................................................10

*United States v. Jasper*,
   2003 WL 1107526 (S.D.N.Y. Mar. 13, 2003) .........................................................................9

*United States v. LaRouche Campaign*,
    841 F.2d 1176 (1st Cir. 1988)......................................................................................7

*United States v. Leonardi*,
    623 F.2d 746 (2d Cir. 1980)........................................................................................5

*United States v. Liddy*,
    354 F. Supp. 208 (D.D.C. 1972)..........................................................................2, 6, 7

*United States v. Marcus Schloss & Co.*,
    1989 WL 62729 (S.D.N.Y. June 5, 1989) ..................................................................6

*United States v. Nektalov*,
    2004 WL 1574721 (S.D.N.Y. July 14, 2004) .............................................................9

*United States v. Nixon*,
    418 U.S. 683 (1974)............................................................................................ *passim*

*United States v. Pena*,
    2016 WL 8735699 (S.D.N.Y. Feb. 12, 2016)............................................................4

*United States v. Saget*,
    991 F.2d 702 (11th Cir. 1993) ....................................................................................5

*United States v. Sawinski*,
    2000 WL 1702032 (S.D.N.Y. Nov. 14, 2000) ............................................................9

*United States v. Schoenborn*,
    4 F.3d 1424 (7th Cir. 1993) ........................................................................................5

*United States v. Seabrook*,
    2017 WL 4838311 (S.D.N.Y. Oct. 23, 2017)...............................................2, 5, 7, 8

*United States v. Shulaya*,
    No. 17-cr-350 (KBF) (S.D.N.Y. June 11, 2018)........................................................5

*United States v. Skelos*,
    2018 WL 2254538 (S.D.N.Y. May 17, 2018) ....................................................4, 5, 8

*United States v. Vasquez*,
    258 F.R.D. 68 (E.D.N.Y. 2009)................................................................................10

*United States v. Weissman*,
    2002 WL 31875410 (S.D.N.Y. Dec. 26, 2002) ...............................................1, 5, 7, 9

*United States v. Yudong Zhu*,
    2014 WL 5366107 (S.D.N.Y. Oct. 14, 2014)...........................................................10

**Rules**

Fed. R. Crim. P. 16(a)(2) ............................................................................................................. 9, 10

Fed. R. Crim. P. 17(c) ............................................................................................................... *passim*

Fed. R. Crim. P. 17(h) ................................................................................................................ 9, 10

Fed. R. Crim. P. 26.2 ................................................................................................................. 9, 10

Fed. R. Evid. 613 ...................................................................................................................... 4, 5, 7

**PRELIMINARY STATEMENT**

This is an improper subpoena.  Milton has demanded that Kirkland produce interview memoranda that it described to the Government in readouts even though he already has detailed notes *of those same readouts* from the Government.  And he has demanded materials relating to a presentation Kirkland made to the Government even though he already has the slide deck for that presentation.  Milton never explains what he thinks is missing from the materials he already has and provides no reason to think anything is.  This is exactly the type of fishing expedition that *Nixon* prohibits—an aimless request motivated by a "hope[] that something useful will turn up." *United States v. Weissman*, 2002 WL 31875410, at *1 (S.D.N.Y. Dec. 26, 2002).[1]

The Subpoena should also be quashed because it does not seek specific, admissible, and relevant evidence.  Rule 17(c) subpoenas cannot be used to "obtain leads" or "seek information" about the Government's case or witnesses.  *United States v. Cherry*, 876 F. Supp. 547, 553 (S.D.N.Y. 1995).  And yet, that is *exactly* how Milton defends the instant Subpoena.  Unable to explain how he intends to admit the requested material at trial, Milton resorts to generic arguments that the Subpoena will "help [him] identify potential trial witnesses" (Opp'n at 10),[2] "prepare for cross examinations" (*id.*), and lead to the "develop[ment] [of] other admissible evidence" (*id.* at 1).  Those might be acceptable justifications for a civil discovery request, but courts have repeatedly held that Rule 17(c) and *Nixon* require more.  *See Cherry*, 876 F. Supp. at 552–53.

Milton's failure to explain how he would admit the materials he has requested, moreover, is entirely unsurprising since there is no conceivable world in which any of the interview memoranda or other documents he has subpoenaed would be admissible at trial.  Kirkland's

---

[1]  All internal quotation marks and citations are omitted, and emphases added, unless otherwise noted.

[2]  Kirkland's July 29, 2022 Memorandum of Law in Support of its Motion to Quash (ECF No. 3) is referred to as "Mot."  Milton's August 10, 2022 opposition to that motion (ECF No. 7) is referred to as "Opp'n."

secondhand descriptions of what Nikola witnesses said, whether in the form of an interview memorandum or a presentation to the Government, are all double hearsay at best and, under established Second Circuit law, cannot be admitted for purposes of impeachment because they are not the witness's own statement. *See United States v. Almonte*, 956 F.2d 27, 29 (2d Cir. 1992). Milton never attempts to address this straightforward problem in his opposition.

Another equally notable omission in Milton's opposition is his failure to cite *any comparable cases in this Circuit* that have upheld subpoenas for interview memoranda against *Nixon* challenges. While Milton claims that "[c]ourts *routinely* grant subpoenas seeking production of interview memoranda" (Opp'n at 1), the cases he cites do not involve requests for comparable materials, do not involve *Nixon* challenges, and are often 30-plus years old (*see id.* at 11). One of the cases he relies on was even decided before *Nixon* became law. (*See id.* (citing *United States v. Liddy*, 354 F. Supp. 208 (D.D.C. 1972)).) Making matters worse, Milton actually cites cases throughout his brief *that in fact quash analogous subpoenas on law firms*. In *United States v. Seabrook*, 2017 WL 4838311, at *3 (S.D.N.Y. Oct. 23, 2017) (cited by Opp'n at 10, 13), for example, the court denied requests for interview memoranda because those materials "cannot be admissible as they consist of a characterization of [the witness's] statements and thus do not constitute impeachment material." *Id.* The same is true here.

## DISCUSSION

### I.  MILTON'S OPPOSITION UNDERSCORES THAT THE SUBPOENA IS AN IMPROPER FISHING EXPEDITION.

Milton's argument that the materials he seeks are "critical" to his defense is entirely speculative and should be rejected. (Opp'n at 9.) He already has the substance of the interview memoranda he is seeking from the Government in the form of 3500 material, and he already has the slide deck for the November 2020 presentation that informs his second and third requests. In

2

his opposition, Milton mostly ignores these facts: his only response is an assertion, without any citation or authority, that he "should not be forced to rely on the government's characterization of these documents." (Opp'n at 7.) But it is his burden to explain why the materials he already has are insufficient, not Kirkland's, and he plainly has not carried that burden. *See United States v. Bergstein*, 2017 WL 6887596 (S.D.N.Y. Dec. 28, 2017) (the assertion that "subpoenaed material may not be exactly the same as what the government sought . . . further runs afoul of *Nixon* by suggesting that the Subpoenas are part of a 'fishing expedition' for unspecified materials"); *United States v. Donziger*, 2021 WL 1865376, at *7 (S.D.N.Y. May 10, 2021) ("It is [Defendant]'s burden to prove that the evidence he seeks is admissible, not Movants' burden to prove that it is not."); *United States v. Barnes*, 560 F. App'x 36, 39–40 (2d Cir. 2014) (same).

### II.     MILTON CANNOT CARRY HIS BURDEN UNDER *NIXON* OF SHOWING THAT HIS SUBPOENA SEEKS ADMISSIBLE EVIDENCE.

#### A.     Milton Has Not Shown That Interview Memoranda Are Admissible.

The Subpoena also fails for the separate and independent reason that it does not seek evidence that can be admitted at trial, as *Nixon* requires. Milton first argues, as a basis for admissibility, that the interview memoranda "contain exculpatory information and will help [him] identify potential trial witnesses." (Opp'n at 10.) To the extent Milton believes the memoranda are admissible simply because they are "exculpatory," that argument obviously fails. Favorable or not, interview summaries "would, of course, be hearsay, and [thus] inadmissible as evidence at trial." *United States v. Brown*, 1995 WL 387698, at *10 (S.D.N.Y. June 30, 1995).

That the memoranda may "help Mr. Milton identify potential trial witnesses," moreover, does not change the analysis. If anything, the argument underscores Milton's misunderstanding of the purpose of Rule 17(c) subpoenas. Civil discovery requests can be used to seek materials that, although not admissible in and of themselves, would lead to the discovery of admissible

evidence. Rule 17(c) subpoenas, however, *cannot* be used for this purpose; the materials they request must be admissible in the first instance. *See, e.g.*, *Cherry*, 876 F. Supp. at 553 (subpoenas cannot be used to obtain "materials which, although not themselves admissible, could lead to admissible evidence"); *United States v. Pena*, 2016 WL 8735699, at *2 (S.D.N.Y. Feb. 12, 2016) (rejecting argument that subpoena "could generate leads which would in turn produce admissible evidence"). Help "identify[ing] potential trial witnesses" is not admissible evidence.

Milton's second explanation for admissibility—that the memoranda "*may* help Mr. Milton prepare for cross examinations" (Opp'n at 10)—fails for the same reasons. Again, *Nixon* requires that requested materials be *admissible* as opposed to just "help[ful]," and Milton has not explained what hearsay exceptions would apply or how he would admit the materials he seeks. As the court explained in *United States v. Rich* when it rejected arguments by a defendant that there "*may* be evidence" that "*may* be of assistance in understanding and explaining certain [] transactions" and which "a defendant *might* seek to use," "Rule 17(c) requires a showing that the materials sought are currently admissible in evidence; it cannot be used as a device to gain understanding or explanation." 1984 WL 845, at *3 (S.D.N.Y. Sept. 7, 1984) (emphasis in original).

Unable to proffer a theory of admissibility, Milton cites several cases for the generic proposition that Rule 17(c) subpoenas can be used to seek impeachment evidence. (*See* Opp'n at 10.) But the cases Milton cites *still require that the materials be admissible* as evidence of impeachment, such as documents that would be admissible as a prior inconsistent statement under Federal Rule of Evidence 613 or as evidence of bias or motive. One of Milton's primary cases, *United States v. Skelos*, 2018 WL 2254538 (S.D.N.Y. May 17, 2018), for example, states that "documents containing prior statements of a witness that are inconsistent with that witness's testimony at trial . . . can be the proper subject of a Rule 17(c) subpoena"—*but only because prior*

4

*inconsistent statements are* "*admissible under Federal Rule of Evidence 613.*" *Id.* at *2. Milton does not cite *any* cases holding that Rule 17(c) subpoenas can be used to seek material that would simply be "helpful" in preparing for cross-examination.

Interview memoranda, moreover, are not admissible as a prior inconsistent statement to impeach the underlying witness. That is because they are, as Milton concedes in a footnote (*see* Opp'n at 13 n.9), statements by *Kirkland* as opposed to statements of the interviewed witness (and they were never shown to or adopted by the witness). *See Weissman*, 2002 WL 31875410, at *2 (holding that interview memoranda cannot be admitted since "[the law firm]—not the witness— prepared the interview notes"); *Seabrook*, 2017 WL 4838311, at *3 (similar). As the Second Circuit explained in *United States v. Almonte*, "[t]he Federal Rules of Evidence allow the introduction of a prior inconsistent statement to impeach a witness[] . . . [but] a 'third party's characterization' of a witness's statement *does not constitute a prior statement of that witness* unless the witness has subscribed to that characterization." 956 F.2d at 29.[3] Thus, while some materials might properly be subject to a Rule 17(c) subpoena for purposes of impeachment, the materials that Milton seeks are not.

**B. Milton Has Not Shown That Materials "Reflecting" Kirkland's November 2020 Presentation to the Government Are Admissible.**

As to his request for materials relating to Kirkland's November 2020 presentation to the Government, Milton argues only that they "may also speak to [] witnesses' bias or motivations for testifying." (Opp'n at 10.) This argument, however, is entirely speculative. Milton does not even

---

[3] Numerous cases hold that materials like interview notes and memos are not admissible at trial. *See, e.g.*, *United States v. Schoenborn*, 4 F.3d 1424, 1429 n.3 (7th Cir. 1993); *United States v. Benson*, 961 F.2d 707, 709 (8th Cir. 1992); *United States v. Saget*, 991 F.2d 702, 710 (11th Cir. 1993); *United States v. Leonardi*, 623 F.2d 746, 757 (2d Cir. 1980); *see also* Guidelines Regarding Appropriate Use of 302 Forms in Criminal Trials, *United States v. Shulaya*, No. 17-cr-350 (KBF), ECF No. 819 (S.D.N.Y. June 11, 2018).

5

assert that there "is" or "will be" evidence of bias and instead simply asserts that there "may" be such evidence. That material "*may*" be admissible, however, is not enough. *Barnes*, 2008 WL 9359654, at *3 (materials cannot be "merely [] *potentially* relevant or admissible"); *Rich*, 1984 WL 845, *3 (material must be "*currently admissible*"). In any event, the materials Milton is seeking would still contain multiple levels of hearsay and would thus be inadmissible for the reasons discussed above, even if they did go to bias.

C. **Courts Routinely Reject Subpoenas for Analogous Materials.**

Milton claims that "[c]ourts routinely issue and enforce subpoenas seeking interview memoranda from law firms." (Opp'n at 11.) This assertion is simply wrong. If subpoenas like Milton's were "routine," Milton would presumably cite an example of a similar subpoena being enforced within the past few years. But the most recent case Milton cites as evidence, and the only one from this Circuit, was decided in the summer of *1989*, over 30 years ago. (*See id.* at 11 (citing *United States v. Marcus Schloss & Co.*, 1989 WL 62729, at *3 (S.D.N.Y. June 5, 1989)).)[4] And that case is irrelevant for the straightforward reason that the *law firm does not appear to have made any arguments under Nixon*. *See Marcus Schloss & Co.*, 1989 WL 62729, at *2. The law firm instead argued that the notes were privileged, a claim that, under the circumstances of the case, the court rejected. *See id.* at *2–3. That ruling has no bearing here.

Milton's second and third cases are no more helpful. The second case (*see* Opp'n at 11) was decided in 1972 and involves a subpoena issued to several media outlets—not a law firm—in

---

[4] Milton repeats his argument that subpoenas like this are "routine" in his introduction, citing *United States v. Cole*, 2021 WL 912425 (S.D.N.Y. Mar. 10, 2021) and *United States v. Carollo*, 2012 WL 1195194 (S.D.N.Y. Apr. 9, 2012). (Opp'n at 1.) But neither of those cases sought interview memoranda. *Cole* involved requests for personnel files. *See* 2021 WL 912425, at *1. And *Carollo* involved requests for "bank statements, tax returns, and other documents that relate to [particular] transfers." 2012 WL 1195194, at *1. The only cases Milton cites that actually relate to interview memoranda are on page 11 of his opposition brief. (*See* Opp'n at 11.)

connection with a prosecution following the Watergate scandal. *See United States v. Liddy*, 354 F. Supp. 208, 209–11 (D.D.C. 1972). Like Milton's first case, this case did not involve a *Nixon* challenge—nor could it have, since *Nixon had not been decided at the time*. Instead, the question in *Liddy* "[was] whether some First Amendment privilege sanctions a newspaper's refusal to produce evidentiary material in its possession relevant to a criminal trial." *Id.* at 211.

Continuing the political theme, Milton's third case (*see* Opp'n at 11) involves a prosecution of Lyndon LaRouche in connection with misconduct following his 1984 presidential bid. *United States v. LaRouche Campaign*, 841 F.2d 1176 (1st Cir. 1988). That case again involved a subpoena being issued to a media outlet, not a law firm. And the subpoena sought recorded outtakes of an interview of a government witness, not the type of secondhand memoranda at issue here. *Id.* at 1177. That is an important distinction, since recordings of a witness would possibly be admissible for impeachment under Rule 613 if they contained inconsistencies, whereas an interview memorandum, for the reasons discussed above, would not be.

Contrary to Milton's halfhearted attempts to distinguish the cases in Kirkland's motion, the far more common practice—at least in recent history—is to quash subpoenas that seek interview memoranda from law firms or other parties. *See, e.g.*, *United States v. Carton*, 2018 WL 5818107, at *6 (S.D.N.Y. Oct. 19, 2018) (quashing law firm subpoena); *Weissman*, 2002 WL 31875410, at *1 (same); *Seabrook*, 2017 WL 4838311, at *3 (same) (cited by Opp'n at 10); *Brown*, 1995 WL 387698, at *10 (quashing subpoena for "memoranda of interviews conducted by either the NYPD or the Bronx District Attorney's Office"); *see also* Mot. at 7 (citing additional examples of courts quashing subpoenas that sought investigative files from law enforcement agencies, which would have included notes and summaries of interviews).

### III. THE COURT SHOULD HOLD THAT RULE 17(C) SUBPOENAS CANNOT BE USED FOR IMPEACHMENT.

The Court should also quash the Subpoena because it only seeks impeachment evidence. While Milton cites several cases that allow Rule 17(c) subpoenas to be used for impeachment (*see* Opp'n at 10), he misses two critical nuances of those cases. First, as already discussed, the cases on which Milton relies still require impeachment materials *to be admissible*. Second, the cases Milton cites do not allow defendants to seek impeachment materials *in advance of trial*, which is what the Subpoena requires. Milton's cases instead hold that Rule 17(c) can require the production of admissible impeachment evidence only "*after the witness testifies*," since "prior inconsistent statements . . . do[] not become relevant" until then. *Skelos*, 2018 WL 2254538, at \*2; *see also Seabrook*, 2017 WL 4838311, at \*2 (same); *United States v. Cole*, 2021 WL 912425, at \*4 (S.D.N.Y. Mar. 10, 2021) (involving a request for production at the start of trial). Milton is asking for pre-trial production of materials for witnesses who are not on the Government's witness list, may not testify even if they are, and have not yet testified in an inconsistent manner. The Subpoena is accordingly improper even under Milton's own cases.

Courts, moreover, have rejected the argument that pre-trial production of impeachment materials is warranted to avoid delay at trial or for convenience. Convenience is not an excuse to disobey *Nixon*'s admissibility mandate, and the proper remedy would be to "require production of impeaching material to the court (but not to counsel), with the court reviewing these documents in camera and then disclosing any admissible documents only after the witness testifies." *Skelos*, 2018 WL 2254538, at \*2; *see also United States v. Giampa*, 1992 WL 296440, at \*4 (S.D.N.Y. Oct. 7, 1992) (modifying subpoena to be returnable "when [the witness] testifies").

In any event, while the Court need not reach this question, it should hold that Rule 17(c) subpoenas cannot be used to seek impeachment evidence at all. The weight of the authority in this

Circuit supports an "absolute prohibition on the use of a Rule 17(c) subpoena solely for impeachment purposes." *Weissman*, 2002 WL 31875410, at *1. Indeed, "[c]ourts have consistently interpreted the admissibility standard of Rule 17(c) to preclude production of materials whose evidentiary use is limited to impeachment." *Cherry*, 876 F. Supp. at 553; *see also, e.g.*, *United States v. Binday*, 908 F. Supp. 2d 485, 492 (S.D.N.Y. 2012); *United States v. Jasper*, 2003 WL 1107526, at *2 (S.D.N.Y. Mar. 13, 2003); *Carton*, 2018 WL 5818107, at *1; *United States v. Nektalov*, 2004 WL 1574721, at *2 (S.D.N.Y. July 14, 2004); *United States v. Sawinski*, 2000 WL 1702032, at *2 (S.D.N.Y. Nov. 14, 2000).

This "absolute prohibition" makes sense. It is entirely speculative to think that impeachment evidence will be admitted at trial: again, a witness would have to be called and testify in an inconsistent manner. While there may be grounds to subpoena a statement that the defendant *knows* is inconsistent after the witness testifies as such, that exception should be carefully limited to avoid burdening the court and third parties with requests that would greatly expand the potential use of Rule 17(c) in a manner that is inconsistent with what *Nixon* advises. Indeed, defendants would be able to seek large swaths of materials from law firms, witnesses, and others to the extent requests like Milton's were allowed, which would "eviscerate Rule 17's limitations on criminal discovery, a result for which there is no support in *Nixon*." *United States v. Ferguson*, 2007 WL 2815068, at *3 (D. Conn. Sept. 26, 2007). This is especially true given that the Federal Rules of Criminal Procedure provide special attention to the production of impeachment material like witness statements. *See* Fed. R. Crim. P. 16(a)(2), 26.2.

## IV.   THE SUBPOENA IS IMPROPER UNDER RULE 17(H).

Milton's request for interview memoranda that were disclosed to the Government is also inappropriate under Rule 17(h). The plain language of that provision holds that "[n]o party may subpoena a statement of a witness or of a prospective witness under this rule" because Rule 26.2

9

"governs the production" of such statements. Fed. R. Crim. P. 17(h). Here, Milton's request would create an end-run around carefully delineated rules regarding the production of witness statements in Rule 26.2 and Rule 16(a)(2). Milton is seeking Kirkland's notes of interview summaries that were disclosed to the Government and that are reflected in Government notes. He should not be allowed to use Rule 17(c) to get copies of those interview summaries from a third party before he is entitled to receive them from the Government under the Jencks Act and Rule 26.2. That is precisely what Rule 17(h) was drafted to prohibit.

Milton claims that "[m]ultiple courts [] have recognized that Rule 17(h) does not prevent a defendant from subpoenaing witness statements," and that the provision only applies to subpoenas issued to the Government. (Opp'n at 13.) But the cases Milton cites are from California and Tennessee. (*See id.* at 13, 14.) Courts in this Circuit have expressly rejected the argument. In *United States v. Yudong Zhu*, 2014 WL 5366107 (S.D.N.Y. Oct. 14, 2014), for example, the defendant argued, like Milton, that "Rule 17(h) applies only to witness statements already in the Government's possession." *Id.* at *3 n.3. The court, however, flatly held that "[t]his argument is without merit." *Id.* As explained in Kirkland's opening brief, moreover, courts have not simply "*considered* extending Rule 17(h) to witness materials in the possession of non-parties," as Milton claims (Opp'n at 14); they have quashed subpoenas in part based on the provision. *See Carton*, 2018 WL 5818107, at *4; *United States v. Vasquez*, 258 F.R.D. 68, 73 (E.D.N.Y. 2009); *United States v. Hatfield*, 2009 WL 2030350, at *2 (E.D.N.Y. July 14, 2009).

## CONCLUSION

For the aforementioned reasons, and for those in Kirkland's July 29, 2022 motion, Kirkland respectfully submits that the Court should grant its motion to quash Milton's subpoena.

| | |
|---|---|
| Dated: New York, New York<br>August 17, 2022 | Kirkland & Ellis LLP<br><br>*/s/ Robert W. Allen, P.C.*<br>Jacquelyn M. Kasulis<br>Robert W. Allen, P.C.<br>KIRKLAND & ELLIS LLP<br>601 Lexington Avenue<br>New York, NY 10022<br>United States<br>Telephone: (212) 446-4800<br>jacquelyn.kasulis@kirkland.com<br>bob.allen@kirkland.com<br><br>*Attorneys for Kirkland & Ellis LLP* |